THE TOWNSHIP OF CENTER v. JOHN S. GILMORE.

1. SPECIAL ELECTION; *Township, Liable for Expenses.* Where the board
of county commissioners of a county calls a special election in a town-
ship of the county, under the provisions of chapter 107, Laws of 1876,
(§§ 68–72, ch. 84, Comp. Laws of 1879,) upon a proposition for the town-
ship to subscribe to the capital stock of a railroad company proposing
to construct a railroad through such township, and gives notice of the
election in a newspaper published in the township, *held,* that the town-
ship is liable for the expense of publishing the notice of the special
election.

2. ——— The case of *Thacher v. Comm'rs of Jefferson Co.,* 13 Kas. 182,
referred to.

### Error from Wilson District Court.

ACTION by *Gilmore* against the *Township of Center,* in
Wilson county, to recover $89.50, with interest, for publish-
ing a notice of a special election held in said township May
30, 1882. Judgment for plaintiff, February 14, 1883. The
defendant brings the case here. The facts are stated in the
opinion.

*T. J. Hudson,* for plaintiff in error.

*C. C. Chase,* for defendants in error.

The opinion of the court was delivered by

HORTON, C. J.: This was an action brought by John S.
Gilmore, the proprietor and publisher of the *Wilson County
Citizen,* against the township of Center, in Wilson county,
to recover the sum of $89.50, with interest, for publishing a
notice of a special election held May 30, 1882, in the town-

ship, upon a proposition for the township to subscribe to the capital stock of a railroad company proposing to construct a railroad through the township. To the petition, the plaintiff in error, defendant below, interposed a general demurrer, which was overruled by the court, and judgment rendered for the claimant. The ruling upon the demurrer is complained of.

The question is, whether the township of Center is liable to pay for publishing the notice of the special election? The election was ordered by the board of county commissioners of Wilson county, under §§ 1–5, ch. 107, Laws of 1876. (§§ 68–72, ch. 84, Comp. Laws of 1879.) Section 3 of said chapter prescribes among other things that—

"The commissioners . . . for such township . . . upon the presentation of the foregoing petition, and such other conditions as may be deemed advisable by the authority ordering such election to the chairman of the board . . . shall convene and make an order, which order shall embrace the terms and conditions set forth in the petition, and shall fix the time for holding said election, which shall be within sixty days from the day on which the commissioners . . . shall be convened."

Section 4 reads:

"Thirty days' notice of such election shall be given in some newspaper published or having a general circulation in such . . . township, . . . and the election shall be held and the returns made and the results ascertained in the same manner as provided by law for general elections."

Section 8 of said chapter further prescribes:

"Before any railroad company shall be entitled to receive any bonds issued in pursuance of the foregoing provisions for the stock of such company, said company shall deliver to the treasurer of such . . . township stock in its said road equal in amount with the bonds authorized to be issued, dollar for dollar."

These provisions make it apparent that the board of county commissioners in calling the special election of 30th of May, 1882, acted simply as the agent of the township of Center. As the board of county commissioners has the authority to

order the election, and as such order must fix the time for holding the election, and also embrace the terms and conditions set forth in the petition presented to the board, it is fairly inferable that the commissioners, as the agents of the township, may cause the notice of the election to be published.

Therefore, we think that the township is liable for the publication of the notice of the election. The voting or not voting of the bonds in Center township affects the tax-payers of that township, but not the tax-payers of the other townships of Wilson county. It seems but just, therefore, that the township interested should be liable for the expense of the publication of the notice of the election.

There are some expressions in the opinion of *Thacher v. Comm'rs of Jefferson Co.*, 13 Kas. 182, somewhat conflicting with these views. It does not follow, however, that because the county of Jefferson was liable under the facts in that particular case, that the township of Center is not liable in this. The decision in *Thacher v. Comm'rs*, supra, was made in 1874. The statute referred to in that decision is ch. 90, Laws of 1870. The election in this case was ordered under § 107, Laws of 1876.

Our conclusion is, that the township should pay for publishing the notice of the election, and also pay the expense of issuing the bonds voted by the tax-payers of the township at such election.

The judgment of the district court must therefore be affirmed.

BREWER, J., concurring: I concur in the conclusion reached by the Chief Justice; and in so doing I do not consider that I am in any manner departing from the views expressed by this court in the opinion filed in the case of *Thacher v. Comm'rs*, 13 Kas. 182. I concurred in that opinion when it was filed; I still think it correct as a decision of the question then presented. In that case we held that the county was liable for the fees of attorneys employed by the county board in defending a suit brought against it to compel certain

action by it in reference to a township election for the voting of bonds; but I think there is a clear distinction between that case and this. In that case we said: "When any duties are imposed upon the commissioners by law, it should be presumed that such duties are imposed upon the commissioners as the agents of the county, unless the contrary clearly appears." With that rule thus stated I am entirely satisfied, and in that opinion we endeavored to point out, and I think did successfully, that the duties were imposed upon the county board as a county board, and without reference to the fact that the particular township was mainly interested, and to be affected by its action. That decision was made in 1874. The act under which these proceedings were had was passed thereafter and by the legislature of 1876, and in providing for the voting of bonds by counties, cities, and townships, prescribes that "the county commissioners *for such county or township,* or the mayor and council for such city, shall cause an election," etc. Several times in the act this expression is used. Now it seems to me that this indicates that the legislature by this legislation intended that the county commissioners should act for the township just as in a similar case they act for the county, or the mayor and council for the city. If they are acting for the township, then *pro hac vice* they are officers of the township; their action is the action of the township, and binding upon it. I see no reason why they may not be constituted officers of the township for this purpose, even though they are the general agents and officers of the county. I suppose the case is the same as if the petition was required to be filed with the district judge, and he directed to order the election.

Again, by § 5 of the old act, the board of county commissioners was required to order the county clerk to make the subscription in the name of the township, and also to issue the bonds in the name of the township. By § 5 of the present act, all this is required, but in addition the statute prescribes that "the board of county commissioners *for and on behalf of such county or township* shall order," etc., thus fur-

ther indicating that the legislature was constituting the commissioners the agents of the township. So far as anything appears in this act in reference to the conduct of the election and the canvass of the votes, it signifies nothing; for its provisions are simply in harmony with those of the general election law. So that I think it may fairly be said in accordance with the reasoning of the case of 13 Kas., *supra*, that it clearly appears that the county commissioners are by this act constituted the special agents of the township, and that their action in ordering the election and causing notice thereof to be published is that of the township, and that for which it is responsible.

It will be borne in mind, in support of this conclusion, that there is eminent justice in this, in that the matter is one of special interest to the township. It is initiated by petition of the tax-payers of the township; the bonds are authorized by its vote, and when issued are binding only on it; and the stock of the railroad company, when issued for the bonds, belongs to it, and is to be placed in the hands of its treasurer.

I am constrained, therefore, to concur with the Chief Justice, and sustain the ruling of the district court.

VALENTINE, J., dissenting: I can hardly concur in the decision of this case. The action was brought to recover the sum of $89.50, with interest, for publishing in the plaintiff's newspaper a notice of a special election held to authorize a subscription to the capital stock of a railroad company.

The plaintiff in his petition alleged that he published this notice, "pursuant to the order of the board of county commissioners of said county," and therefore asked judgment against the *Township of Center* for publishing the same. Section 1, article 1, of the act relating to townships and township officers, reads as follows:

"SECTION 1. Each organized township in this state shall be a body politic and corporate, and, in its proper name, sue and be sued, and may appoint all necessary agents and attorneys in that behalf, and may make all contracts that may be neces-

sary and convenient for the exercise of its corporate powers." (Comp. Laws of 1879, ch. 110, art. 1, § 1.)

The officers of a township are a trustee, a clerk, and a treasurer. (Sec. 3, art. 2, of said act.) These officers represent the township as a municipal corporation, and, among other things, constitute the " auditing board" of the township; and the statutes provide, among other things, that—

*"No bill against any township shall be paid until allowed by a majority of said auditing board, and all bills allowed by said board shall be recorded by the clerk in a book to be kept by him for that purpose."* (Laws of 1879, ch. 179, § 4; Comp. Laws of 1879, ch. 110, ¶ 5991.)

And § 22, article 4, of said act relating to townships and township officers, provides, among other things, as follows:

"SECTION 22. The duties of the township trustee shall be: . . . *Eight*. Shall superintend all the *pecuniary concerns* of his township."

Now upon what theory can it be held that the township is liable in the present case? There is no statute authorizing a township organization, or the township officers, to procure the publication of any such notice as was published in the present case; and there is no statute that makes the township liable for the publication of any such notice; and the township officers in the present case never authorized the publication of any such notice, nor did they ever ratify the publication thereof. As before stated, the notice was published wholly in pursuance of an order of the board of county commissioners. Now if the board of county commissioners had authority to order the publication of this notice, then the county is liable; but if the board did not have any such authority, then neither the county nor any other municipal organization is liable. In my opinion, the county is liable. But under no circumstances can the township be held liable for what it never authorized, and never ratified, and when there is no statute giving it any power to authorize or ratify the same, and no statute providing that it shall be liable. I think the county is liable in such cases, for the following, among other

reasons: The board of county commissioners orders the election, (Comp. Laws of 1879, ch. 84, ¶ 4953,) and canvasses the returns and declares the result. (Comp. Laws of 1879, ch. 84, ¶ 4956; id., ch. 36, art. 3, ¶ 2191, § 28; id., ch. 110, ¶ 5975.) The publication of this notice is connected with the election; the publication was ordered in the present case by the county board; there is no provision of law that I am aware of requiring the township to pay the expenses of this election, or indeed of any election; while there are provisions of law requiring counties to pay the ordinary election expenses, (Comp. Laws of 1879, ch. 36, art. 5, §§ 71, 73, 74;) and upon general principles, a county is liable for whatever the county board rightly orders or contracts for, unless there is some statute to the contrary. A county is generally liable upon any contract rightfully made by its board, unless some statute provides otherwise; but how any public corporation, including a township, can be held liable, independent of any contract and independent of any statutory liability, is not quite so easily perceived.

This notice was published under chapter 107 of the Laws of 1876. (Comp. Laws of 1879, ch. 84, ¶¶ 4953 to 4967, pp. 792 to 795.) This act almost entirely, if not entirely, ignores the township as a municipal organization or corporation, *and treats the township merely as a territorial subdivision of the county for which the county officers, and not the township officers, must act.* The act also, I think, entirely ignores the township officers, with one seeming exception; and that exception, or seeming exception, is contained in § 8 of the act, which reads as follows:

"SEC. 8. Before any railroad company shall be entitled to receive any bonds issued in pursuance of the foregoing provisions for the stock of such company, said company shall deliver to the treasurer of such county, township, or city, stock in their said road equal in amount with the bonds authorized to be issued, dollar for dollar."

The words "county, township, or city," which are used in this section, are frequently used in other sections of this act,

and are never elsewhere used with reference to a township officer; but in all other cases where they are used with reference to any officer or officers, they are used with reference to county or city officers; that is, the words "county" and "township" are used with reference to county officers, and the word "city" is used with reference to city officers.

For the purpose of this case, however, I shall suppose that the word "treasurer," as used in §8, means the township treasurer, and not the county treasurer; for, even with that construction, the township cannot be held to be liable for something which it never authorized, never ratified, and for which no statute makes it liable. Among the acts required by said statute to be performed by county officers with respect to townships, the following may be mentioned: The petition for the election is presented to the board of county commissioners; the board acts upon it; calls the election; where an election is called, the same is to be held and the returns made and canvassed in accordance with the general election laws, and of course the county board canvasses such returns and declares the result; and the ordinary expenses, as before stated, may be paid by the county board. If the election is favorable, the board orders the subscription to the capital stock of the railroad company to be made; and the county clerk makes the subscription; and the bonds, when issued, are signed by the chairman of the county board, and attested by the county clerk; and the board then levies all the taxes to pay such bonds. The taxes are collected by the county treasurer, and are paid out on the bonds by him, unless otherwise stipulated; and with the taxes levied for a sinking fund and any surplus of taxes levied to pay interest, the county board may purchase any of the outstanding bonds. It will be seen that *not even the subscription to the capital stock of the railroad company is made by the township or its officers, but such subscription is made by the county clerk upon the order of the board of county commissioners.* (See §5 of said ch. 107, of the Laws of 1876; Comp. Laws of 1879, ch. 84,

¶ 4957.)  *And neither does the township nor any of its offi-cers issue the bonds or levy or collect the taxes for their payment, or pay the same.*  Indeed, no township officer is mentioned in the act, except, perhaps, in said § 8, and that section does not mention the township trustee, or the township clerk, or the township board.  It is probable that the township may receive some benefit from transactions had under the opera-tion of the act, but this is not enough to make the township responsible for all that is done under the act.  The town-ship certainly should not be held to be liable for the time occupied by the county commissioners, the county clerk, or the county treasurer in the transaction of business under the act; and indeed I would think that the township could not, under the statutes, be held liable to pay for any-thing done under the act.  It is possible that, with reference to some of the things which might be done under the act, the township might make a *valid contract, and be held liable on its contract;* it might possibly make a valid contract for the publication of such a notice as was published in the present case, and be held liable on its contract.  But I cannot think that a township can be held liable in any case, independent of contract, and independent of all statutory liability.  A township is never held to be liable because a public county road is laid out through the township, although the road may benefit the township; nor is it ever held to be liable for the construction of a county bridge in the township, where the board of county commissioners constructs the same.  Nor is the township held liable for any possible benefits received, where it has nothing to do in bringing about such benefits, and where there is no law requiring the township to pay for the same.  In 1874, a decision was rendered by this court, under an act of the legislature of 1870, (*Thacher v. Comm'rs of Jefferson Co.,* 13 Kas. 182; Laws of 1870, ch. 90; Comp. Laws of 1879, ch. 84, ¶ 4968 to ¶ 4975,) which decision ap-plies in many particulars to the present case.  The statute of 1870, which was construed in that case, resembles in many particulars the statute of 1876, which is construed in this

case; and nearly all that is said in that decision with reference to the statute of 1870, will apply in this case with reference to the statute of 1876. (13 Kas. 188 to 191.) The statute of 1870 is much shorter however than the statute of 1876, the statute of 1870 containing only nine sections, while the statute of 1876 contains sixteen sections. *There is no provision in the statute of 1870, however, similar to section 8, above quoted from the statute of 1876.* And there are many other provisions in the statute of 1876 not contained in the statute of 1870, and there are also some differences in the provisions. But I think, however, that while both the decision and the language as used in the case of *Thacher v. Comm'rs of Jefferson Co.*, 13 Kas. 182, *et seq.*, are clearly correct as applied to the statute of 1870, they are also generally correct as applied to the statute of 1876. Of course there may be some exceptions.

For the foregoing reasons, among others, I dissent from the decision in this case.